```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 ----------------------------------------X
 WILLIAM TROY MCCUNE,
                                                  NOT FOR PUBLICATION
            Plaintiff,
                                                  MEMORANDUM & ORDER
        - against –
                                                  08-CV-2677 (KAM)
 RUGGED ENTERTAINMENT, LLC, ASLAN
 PRODUCTIONS INC., IMAGE ENTERTAINMENT,
 PETER PIRER, DAVID CHARLES COHEN,
 MATTEO CAPOLUONGO, DREAM HAMPTON,
 ADAM H. MILLER, KELLY SPIRER,
 JEFF BOLLMAN and SEAN ADAIR,

            Defendants.
 ----------------------------------------X
```
**MATSUMOTO**, United States District Judge:

Plaintiff William McCune ("McCune" or "plaintiff") filed the instant action against defendants Rugged Entertainment, LLC, Aslan Productions, Inc., and others (collectively, "defendants") alleging that defendants used plaintiff's image and likeness without authorization in a DVD documentary produced, directed, and distributed by defendants. (Amended Complaint ("Complaint" or "Compl."), Doc. No. 14 at ¶ 82, 94.) Two motions are presently before the court: (i) plaintiff's motion to dismiss the action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) (see Plaintiff's Motion to Dismiss ("Pl. Mot. to Dismiss"), Doc. Entry No. 17); and (ii) defendants' motion for sanctions pursuant to 28 U.S.C. § 1927 and the court's inherent powers. (See Defendant's Motion for Sanctions ("Def. Sanctions Mot."), Doc. Entry No. 24.)

For the reasons set forth below, plaintiff's motion to dismiss with prejudice is granted and defendants' motion for sanctions is denied.

## BACKGROUND

In September 2007, defendants released a DVD entitled "Notorious B.I.G.: Bigger than Life" (the "documentary"). (Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. S.J. Mem."), at 2.) The documentary, based on the life of entertainer and artist Christopher Wallace ("Wallace"), contained video footage of Wallace interacting with plaintiff on the streets of Brooklyn in 1994. (*Id.* at 3.)

Plaintiff's Complaint alleged that defendants used plaintiff's image in the documentary as part of an "advertisement in disguise" for a separate feature film, "Notorious," that was also based on the life of Christopher Wallace but being released theatrically by Fox Searchlight Pictures. (Compl. at ¶ 98; Def. S.J. Mem. at 3, 10.) The crux of plaintiff's Complaint relied on a purported relationship between defendants and Fox Searchlight Pictures. (Affirmation of David Segal at ¶ 4-5, attached to Pl. Mot. to Dismiss.)

On or about February 6, 2009, defendants filed a motion for summary judgment with evidentiary support for defendants' position that no relationship exists between

defendants and Fox Searchlight Pictures.  (*See* Def. S.J. Mem. at 4-5.)  Instead of responding to defendants' motion for summary judgment, approximately one month later plaintiff moved for voluntary dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  (Pl. Mot. to Dismiss.)  In his moving papers, plaintiff explained that he sought a voluntary dismissal because "[h]aving reviewed the defendants' summary judgment motion and the accompanying submissions, it is clear that the basis upon which the plaintiff believed that the defendants would be liable does not exist."  (Pl. Mot. to Dismiss at 1.)

Defendants opposed plaintiff's motion for voluntary dismissal by letter dated March 26, 2009 and requested permission to move for sanctions under Rule 11.  (Defendants' Letter dated 3/26/09, Doc. Entry No. 18 ("Def. 3/26/09 Ltr.".)  Following a pre-motion conference with the court, the instant motions ensued.  (*See* Def. Sanctions Mot.; Plaintiff's Opposition to Sanctions ("Pl. Sanctions Opp'n"), Doc. Entry No. 25; Defendants' Reply ("Def. Sanctions Reply"), Doc. Entry No. 26.)

## **DISCUSSION**

Abandoning the claim for sanctions under Rule 11, defendants seek sanctions pursuant to 28 U.S.C. § 1927 and under

the court's inherent powers pursuant to Rule 41(a)(2).  (Def. Sanctions Mot.)

**A. Legal Standards**

    **1. Authority to Impose Sanctions Under 28 U.S.C. § 1927.**

Pursuant to 28 U.S.C. Section 1927, courts have authority to sanction attorneys for "unreasonabl[e] and vexatious[]" conduct and to award the other party reasonable costs and fees.  28 U.S.C. § 1927.  The Section provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id*.  The Second Circuit has repeatedly held that imposition of sanctions under this section requires a showing of bad faith on the part of the attorney. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (stating that the imposition of sanctions under 28 U.S.C. § 1927 is only authorized when "there is a clear showing of bad faith") (*quoting Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)(overruled on other grounds)); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("Imposition of a sanction under § 1927 requires a clear showing of bad faith.") (citation and internal quotation omitted).

Thus, an award is "proper" under this Section only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri*, 803 F.2d at 1273; *Schlaifer*, 194 F.3d at 336 (same).

### 2. Authority to Impose Sanctions under a Court's Inherent Powers

Similar to sanctions under 28 U.S.C. § 1927, under its "inherent powers" to supervise and control its own proceedings a court may impose "attorney's fees against the offending party and his attorney when it determines a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Agee v. Paramount Communications, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997) (*quoting Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985)(overruled in part on other grounds). Unlike sanctions brought under § 1927, sanctions brought under a court's inherent powers may be made against the losing party itself as well as the losing party's attorney. *Hudson Motors Partnership v. Crest Leasing Enterprises*, 845 F. Supp. 969, 982 (E.D.N.Y. 1994).

### 3. Standards for Applying Sanctions Under Both 28 U.S.C. § 1927 and the Court's Inherent Powers

Courts use the same standard for evaluating a sanctions claim under either 28 U.S.C. § 1927 or the court's inherent power, and the Second Circuit has stated that "the only

5

meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri*, 803 F.2d at 1273.

Thus, "[t]o impose sanctions under either [1927 or the court's inherent power], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay."[1] *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (citation and internal quotation omitted). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Sierra Club,* 776 F.2d at 390. A claim is deemed

---

[1] The Second Circuit has also held that a procedural requirement of notice and an opportunity to be heard must be met before a court may impose sanctions. *See Schlaifer*, 194 F.3d at 334. The minimum notice requirement for sanctions requires "that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Id*. Further, "only conduct explicitly referred to in the instrument providing notice is sanctionable." *Id.* Finally, an attorney against whom sanctions are being considered must receive an opportunity to be heard. *Id.* In the instant case, neither party raises the issue of notice and the court finds that the procedural requirements for sanctions have been met to the extent that: (1) defendant has informed plaintiff of the legal bases for the sanctions motion; (2) defendant has identified the specific acts and omissions for which sanctions are sought; and (3) plaintiff's counsel has had an opportunity to be heard and defend himself against the charges.

6

"colorable" when, viewed in light of the reasonable beliefs of the party making the claim, it has some amount of factual and legal support. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78-79 (2d Cir. 2000); *see also Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980) (overruled in part on other grounds) ("The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be* established, not whether such facts actually *had been* established.") (emphasis added).

For the second element of bad faith, the Second Circuit has "restrictively" interpreted this standard in determining whether certain conduct merits sanction. *Eisemann*, 204 F.3d at 396. Thus, the Second Circuit has noted:

> To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts.

*Id.* (quoting *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)). For a finding of bad faith, therefore, a court must: (i) find that the challenged actions were taken for improper purposes, such as harassment or delay;

7

and (ii) provide a high degree of specificity in the factual findings. *See Oliveri*, 803 F.2d at 1272.

Under the "bad faith" standard, the type of conduct found to merit sanctions in this Circuit includes:

> [R]esubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; making several insupportable bias recusal motions and repeated motions to reargue; continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased; and waiting until the eve of trial before making a jury demand.

*Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995) (*quoting Hudson Motors*, 845 F. Supp. at 978) (internal quotation marks omitted); *see also Dow Chem.*, 782 F.2d at 345 ("The appropriate focus for the court in applying the bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining the litigation, for an assessment of whether there has been substantive bad faith as exhibited by, for example, its pursuit of frivolous contentions, or procedural bad faith as exhibited by, for example, its use of oppressive tactics or its willful violations of court orders.").

Thus, in this Circuit, the bad faith standard is not easily satisfied and sanctions are warranted only in extreme cases. *See, e.g., Revson*, 221 F.3d at 77-78 (reversing trial court's award of sanctions despite conduct by counsel including:

8

(i) sending letter to defendant attorney Cinque threatening to tarnish his reputation; (ii) publicly accusing Cinque of fraud without any concrete evidence to support the claim; (iii) threatening to send a letter to the court accusing Cinque of criminal conduct if he did not capitulate to [the plaintiff's] demands; and (iv) repeatedly attacking Cinque in an offensive and demeaning fashion) (internal citations and quotations omitted); *60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities)*, 218 F.3d 109, 115-17 (2d Cir. 2000) (imposing sanctions when the party in the prior bankruptcy proceedings "clearly lacked standing," then appealed the decision of the Bankruptcy Court despite that court's warning that such an appeal was meritless, and then, on appeal before the District Court, made claims having "absolutely nothing to do with the merits of his case" and "disparaged and made unsubstantiated allegations impugning the integrity of the Bankruptcy Court"); *Oliveri*, 803 F.2d at 1276-78 (imposition of sanctions reversed and no bad faith found despite District Court's holding that the Plaintiff was "unworthy of belief and [that] his testimony was incredible") (internal quotations omitted).

## B. Application

The crucial inquiries here involve colorability and bad faith. As discussed below, defendants have failed to meet the standard for either element. Accordingly, defendants' motion for sanctions is denied and plaintiff's motion for voluntary dismissal with prejudice is granted.

### 1. Colorability

To award sanctions, the court must find that the claims in McCune's amended complaint are entirely without color. *See Eisemann*, 204 F.3d at 396. The threshold for colorability is low. Claims are deemed "colorable" when, viewed in light of the reasonable beliefs of the party making the claim, the claim has *some* amount of factual and legal support. *See Revson*, 221 F.3d at 78-79 (noting that to fail colorability element requires finding that "the offending party's claims were *entirely meritless*") (emphasis added).

Here, the court is unable to conclude that plaintiff's claims were entirely meritless. Rather, viewing plaintiff's claims in light of plaintiffs' reasonable beliefs, the claims asserted in the Complaint could be deemed to have *some* amount of factual and legal support. *See id.*

Approximately sixteen months after defendants' documentary was released, the feature film "Notorious" was

released by Fox Searchlight Pictures. (Def. S.J. Mem. at 2, 3, 10.) Because the two films were released in relatively close proximity and contained similar subject matter revolving around the life of Christopher Wallace, it is possible that a reasonable attorney could conclude that a connection existed between defendant's documentary and "Notorious." (Def. S.J. Mem. at 2, 3, 10.) Although McCune had not yet established a connection between defendants and Fox Searchlight Pictures at the time of the filing of his Complaint, a reasonable attorney could have concluded that facts supporting his claim that defendants' documentary was "an advertisement in disguise," (Compl. § 98), might later be established. *See Nemeroff*, 620 F.2d at 348 ("The question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established."); *see also Twombly, 550 U.S. at 556* (noting, in the motion to dismiss context, that a well-pleaded complaint may proceed to discovery even where "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely").

Here, regardless of the ultimate merits of plaintiff's claims (which he himself has acknowledged did not withstand defendants' arguments and evidentiary support), there "is no evidence to suggest that the [plaintiff or his attorney] had

utterly no basis for his subjective belief in the merits of their case." *See Schlaifer*, 194 F.3d at 340-41. Accordingly, plaintiff's claim cannot be deemed entirely colorless. *Cf. Mone v. Comm'r*, 774 F.2d 570, 574-75 (2d Cir. 1985) (imposing sanctions and holding that "the utter irrelevance of [counsel's] arguments on behalf of [his client] in this appeal constituted unreasonable and vexatious litigation" where the asserted claims had not a "scintilla of legal merit").

### 2. Bad Faith

Similarly, under the second element, the court cannot find with the required high degree of factual specificity that plaintiff's attorney's decisions were "so completely without merit as to require the conclusion that [they] must have been undertaken for some improper purpose such as delay" giving rise to an inference of bad faith. *Oliveri*, 803 F.2d at 1273.

Here, as previously discussed, the court cannot conclude that plaintiff's claims were entirely colorless. Further, setting aside defendants' bald, conclusory allegations of bad faith, there is insufficient evidence for the court to conclude that plaintiff's actions must have been undertaken for improper purposes. *Cf. Gollomp v. Spitzer*, 568 F.3d 355, 369-71 (2d Cir. 2009) (upholding a finding of sanctions under § 1927 when attorneys brought claims against the state of New York despite prior warnings by several courts that similar claims

were barred by the Eleventh Amendment and also made misrepresentations to the Magistrate Judge regarding an attorney's disciplinary record).

Indeed, to the contrary, the available record suggests that plaintiff's counsel proceeded in good faith. Thus, rather than vexatiously seeking to delay the proceedings, plaintiff's counsel moved promptly to voluntarily dismiss the action with prejudice upon reaching the conclusion that his claims lacked a factual bases because there was no connection between defendants and Fox Searchlight Pictures. (*See* Pl. Mot. to Dismiss at 2.) Further, the court finds no basis to conclude that plaintiff had any ulterior motive for filing his complaint. *See Keller*, 55 F.3d at 99 (finding no bad faith despite counsel's "frustrating . . . manner of conducting negotiations" over settlement agreement where counsel appeared to have had a bona fide belief in her demands and it did not appear that the attorney had "any ulterior motive for insisting on different language" in the agreement).

Under these facts, the court cannot conclude with the required high degree of factual specificity that plaintiff or plaintiff's counsel acted in bad faith. *See, e.g.*, Dow Chem., 782 F.2d at 344 (rejecting district court's finding that because counsel's actions "put innocent parties to substantial legal expense" justice required award of attorneys' fees because it

amounted to no more than a restatement of criticisms of the American Rule and did not provide sufficient factual support for finding of bad faith or create entitlement to sanctions).

## CONCLUSION

For the foregoing reasons, defendants' motion for sanctions is denied and plaintiff's motion for voluntary dismissal with prejudice is granted. The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

Dated: Brooklyn, New York
　　　　March 29, 2010

　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　KIYO A. MATSUMOTO
　　　　　　　　　　　　　　　　　　　　United States District Judge
　　　　　　　　　　　　　　　　　　　　Eastern District of New York